UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TINA H.,[1]

                      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

DECISION & ORDER

21-CV-1064MWP

**PRELIMINARY STATEMENT**

Plaintiff Tina H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 10).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 7, 8).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I.  **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [her] past work; and
>
> (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 5, 2016, the application date. (Tr. 17).[2] At step two, the ALJ concluded that plaintiff had severe mental impairments, variously diagnosed as bipolar disorder, alcohol use disorder, antisocial personality disorder, and schizoaffective disorder. (Tr. 18). The ALJ also found that plaintiff suffered from several nonsevere physical impairments. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 18-20). With respect to plaintiff's mental impairments, the ALJ considered the four broad categories of mental functioning. (*Id.*). Specifically, the ALJ determined that

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

plaintiff had mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace and moderate limitations in interacting with others and adapting or managing herself.  (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform work at all physical exertional levels but with certain mental limitations.  (Tr. 20-26).  Specifically, the ALJ found that plaintiff could perform work involving simple, routine, and repetitive tasks and requiring simple work-related decisions and occasional interaction with supervisors and coworkers, but she was unable to work at a production rate pace or interact with the public.  (*Id.*).

At step four, the ALJ found that plaintiff had no past relevant work.  (Tr. 26).  At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on her age, education, work experience, and RFC, plaintiff could perform, such as vehicle cleaner, salvage laborer, and cleaner.  (Tr. 27).  Accordingly, the ALJ found that plaintiff was not disabled.  (Tr. 28).

### III.  Plaintiff's Contentions

Plaintiff argues that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 7-1; 9). Specifically, plaintiff maintains that the mental portion of the ALJ's RFC assessment conflicts with certain of the limitations contained in a December 2020 opinion authored by her treating mental health counselor, Leah Mruczek, MSW, even though the ALJ purported to give Mruczek's opinion "great weight."  (Docket # 7-1 at 11-14).  In addition, plaintiff argues that the ALJ improperly relied upon and mischaracterized plaintiff's daily activities in concluding that plaintiff was capable of occasional interaction with coworkers and supervisors.  (*Id.* at 14-17).

IV.     Analysis

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

A.     **The ALJ's Consideration of Mruczek's Opinion**

Plaintiff argues that the ALJ failed "to provide some reasoning why [he] would give 'great weight' to [Mruczek's] [December 2020] opinion[,] . . . yet not credit the limitations found therein." (Docket # 7-1 at 14).  In plaintiff's view, Mruczek's opinion that plaintiff would be unable to understand, remember and carry out very short and simple instructions for up to 20% of the workday is inconsistent with the ALJ's conclusion that Mruczek could engage in competitive work.  (*Id.*).

On July 16, 2020, Mruczek completed an earlier Mental RFC Questionnaire relating to plaintiff.  (Tr. 1666-70).  Mruczek indicated that plaintiff had been diagnosed with schizoaffective disorder, bipolar type.  (*Id.*).  At the time, Mruczek reported that she was meeting with plaintiff weekly for approximately thirty minutes.  (*Id.*).

6

Mruczek opined that plaintiff was precluded from traveling in unfamiliar places or using public transportation and was unable to perform several areas of mental work-related functions for more than 20 percent of the workday: namely, remembering work procedures; maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and, responding appropriately to changes in a routine work setting.  (*Id.*).  She also opined that plaintiff was unable to perform several areas of work-related mental functions for 11 to 20 percent of the workday: namely, understanding, remembering, and carrying out detailed instructions; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; and, setting realistic goals or making plans independently of others.  (*Id.*).  According to Mruczek, plaintiff had no limitation in her ability to understand, remember, and carry out very short and simple instructions.  (*Id.*).

Mruczek reported that plaintiff struggled most with social interactions and that her history of trauma triggered intrusive thoughts and consistent distractions, which interfered with plaintiff's ability to sustain concentration and memory.  (*Id.*).  She opined that plaintiff

would be off task more than thirty percent of the workday and that she would be absent more than four days per month. (*Id.*).

Mruczek completed another medical source statement five months later, on December 10, 2020. (Tr. 2038-40). She noted that plaintiff's mental health symptoms fluctuated from time to time but that she had been responsive to outpatient treatment, which she continued to receive on a weekly basis. (*Id.*). Mruczek opined that for eleven to twenty percent of the workday plaintiff would be unable to remember work procedures, understand, remember, and carry out very short and simple instructions, understand and remember detailed instructions, ask simple questions or request assistance, or set realistic goals or make plans independently of others. (*Id.*). According to Mruczek, for less than ten percent of the workday plaintiff would be unable to carry out detailed instructions, maintain attention for two-hour segments, sustain an ordinary routine without special supervision, make simple work-related decisions, deal with normal work stress, and be aware of normal hazards and take appropriate precautions. (*Id.*). Mruczek opined that plaintiff had no limitation in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances, work in coordination with or proximity to others without being unduly distracted, complete a workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and travel to unfamiliar places or use public transportation. (*Id.*). According to Mruczek, plaintiff was likely to be absent four or more days per month. (*Id.*).

The ALJ considered and weighed Mruczek's July and December 2020 opinions.[3] With respect to the July 2020 opinion, the ALJ determined it was entitled to "little weight," concluding that the severe limitations assessed were inconsistent with the longitudinal medical record and plaintiff's activities of daily living. (Tr. 24-25). Although the ALJ recognized the treatment relationship between Mruczek and plaintiff, the ALJ found that the assessed limitations in the July 2020 opinion were inconsistent with plaintiff's mental health treatment records documenting that plaintiff's mental health had remained stable for the previous several years and her minimal mental status examination findings. (*Id.*). The ALJ also found that the assessed limitations were inconsistent with plaintiff's daily activities, which included caring for her two young children and obtaining a college degree. (*Id.*).

In determining that Mruczek's December 2020 opinion was entitled to "great weight overall," the ALJ noted that the limitations assessed by Mruczek reflected her opinion that plaintiff's mental functional capacity had improved – an opinion the ALJ found more consistent with the record than Mruczek's earlier opinion. (Tr. 25-26). According to the ALJ, he viewed the limitations assessed by Mruczek in her December 2020 opinion to be consistent "with a finding of an overall moderate limitation" and accounted for the moderate limitations in the mental RFC by restricting plaintiff to simple work and decision-making and limited social interactions. (*Id.*).

Plaintiff challenges the ALJ's finding that she was capable of performing simple, routine work on the grounds that it conflicted with Mruczek's opinion that plaintiff "would be unable to understand, remember and carry out 'very short and simple' instructions for up to 20%

---

[3] Mruczek apparently also authored opinions on July 8, 2019 and November 4, 2020. (Tr. 2018-19, 2028-29). The ALJ considered the July 2019 opinion but attributed it to Mruczek's treating psychiatric nurse practitioner, Sheryl Campbell Julien, N.P. (Tr. 24). The ALJ did not mention or apparently consider Mruczek's November 2020 opinion.

of the time." (Docket # 7-1 at 13).  Plaintiff also argues that the ALJ failed to explain this alleged conflict.  (Docket ## 7-1 at 13-14; 9).  Upon review of the ALJ's decision and the record, I find that the mental portion of the ALJ's RFC determination does not necessarily conflict with Mruczek's opined limitations, and, in any event, the ALJ adequately explained how he incorporated Mruczek's opinion into the RFC.

        I disagree with plaintiff's contention that Mruczek's assessment that she would be unable to perform simple work-related tasks for between eleven and twenty percent of the workday necessarily means she is disabled.  During the administrative hearing, the vocational expert testified that an individual may be off task for up to fifteen percent of the workday and still maintain competitive employment.  (Tr. 89).  Based upon that opinion, a limitation in the ability to perform certain tasks between eleven and twenty percent of the workday is not necessarily incompatible with competitive employment.  In other words, according to the vocational expert's testimony, although the inability to perform simple work-related tasks for twenty percent of the workday would be work preclusive, the inability to do so for eleven percent of the workday would not necessarily have the same result.  *See Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 436 (W.D.N.Y. 2019) ("[p]laintiff's argument is based on a mischaracterization of the record[;] . . . based on [the doctor's] assessment that [p]laintiff has moderate limitations (meaning unable to function eleven to twenty-five percent of the time) in some areas of mental functioning[,] [p]laintiff's counsel [erroneously] extrapolates that [p]laintiff is 'unable to function' or will be 'off task' twenty-five percent of the workday"); *see also Bates v. Comm'r of Soc. Sec.*, 2019 WL1301960, *5 (E.D. Tenn. 2019) ("the low ends of the . . . ranges opined to by [the doctor] are somewhat more consistent with sedentary work[,] [b]ut . . . the high ends of [the doctor's] ranges clearly cover the limitations adopted by the

ALJ[;] [t]hus, the ALJ did not 'reject' [the doctor's] opinion; rather, she properly incorporated it into her findings and provided good reasons for doing so").

Moreover, while the ALJ determined that Mruczek's opinion was entitled to great weight "overall," the ALJ's discussion of the opinion demonstrates that the ALJ considered the opinion congruous with the longitudinal record to the extent that it was "consistent with a finding of an overall moderate limitation" in mental functioning. (Tr. 26). According to the ALJ, the record showed moderate mental limitations because it demonstrated that plaintiff maintained stable mental health throughout the relevant period with occasional exacerbation of her mental symptoms. (*Id.*). Additionally, moderate limitations were consistent with the other medical opinions of record, which the ALJ determined were entitled to "great weight," including the April 2017 and June 2018 opinions of treating nurse practitioner Rosanna Carter, DNP, who assessed that plaintiff suffered from some moderate mental work-related limitations (Tr. 24 (citing Tr. 1679-80, 1683-84)), and Mruczek's July 2019 opinion,[4] which also assessed moderate limitations (Tr. 24 (citing Tr. 1685-86)).

The ALJ accounted for plaintiff's moderate mental health symptoms by limiting her to simple, non-production rate work involving simple decision-making and limited social interactions. (Tr. 20). On this record, I find that the ALJ adequately explained his consideration of Mruczek's opinion and his view that her opinion was that plaintiff had moderate mental limitations in mental functioning; I further find that the ALJ assessed an RFC that was generally consistent with that opinion. *See*, *e.g.*, *Bethany A. v. Comm'r of Soc. Sec.*, 2022 WL 170405, *5 (W.D.N.Y. 2022) ("[a] finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work[;] [t]he Second Circuit has held that moderate limitations in

---

[4] As noted above, the ALJ attributed this opinion to nurse practitioner Sheryl Campbell Julien, although it was apparently signed by Mruczek. (*Compare* Tr. 24 *with* Tr. 1686).

work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work") (collecting cases); *Cory W. v. Comm'r of Soc. Sec.*, 2021 WL 5109663, *5 (W.D.N.Y. 2021) ("[m]oderate mental limitations do not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work") (collecting cases). Accordingly, I find that remand is not warranted on this basis.

      **B.**      **The ALJ's Assessment of Plaintiff's Subjective Complaints**

I turn next to plaintiff's contention that the ALJ improperly discounted her subjective complaints concerning her ability to interact with others by mischaracterizing and exaggerating her activities of daily living. (Docket # 7-1 at 14-17). For the reasons explained below, plaintiff's challenge is without merit.

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether the evidence reflects that the claimant has a medically-determinable impairment or impairments that could produce the relevant symptoms. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [her] pain or other symptoms . . . ; and (7) [o]ther factors

>   concerning [the claimant's] functional limitations and restrictions
>   due to pain or other symptoms.

See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

The ALJ concluded that plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21). The ALJ assessed plaintiff's subjective complaints in the context of the entire record. I disagree with plaintiff that, in doing so, the ALJ misconstrued the record evidence.

Plaintiff's challenge largely rests on her disagreement with the ALJ's characterization of the evidence relating to her ability to engage in activities of daily living. (Docket # 7-1 at 14-17). Contrary to plaintiff's contention, the ALJ applied the proper legal standards in analyzing plaintiff's subjective complaints, and substantial evidence supports the ALJ's determination that, for the reasons he stated, plaintiff's complaints were not consistent with the record evidence. *See Luther v. Colvin*, 2013 WL 3816540, *7 (W.D.N.Y. 2013) (ALJ properly assessed subjective complaints where she "reviewed all of [p]laintiff's subjective complaints . . . [and] properly considered [p]laintiff's activities of daily living, inconsistent testimony and how her symptoms affected her attempts at maintaining a job"). In his decision, the ALJ recounted much of plaintiff's mental health treatment history, noting that the treatment records demonstrated that plaintiff's symptoms were generally stable throughout the relevant period, although she continued to experience situational life stressors. (Tr. 21-23). The ALJ further noted that plaintiff's testimony and the medical records demonstrated that, despite complaints of disabling symptoms, she was able to engage in significant activities of daily living, including being able to "excel and earn a college degree in business," raise her twin daughters, and maintain relationships with family and friends. (Tr. 22). In addition, the ALJ noted that

despite situational stressors, including housing difficulties, a miscarriage, and pregnancy with twins, plaintiff was able to maintain stability of her psychiatric symptoms through treatment and self-care techniques.  (Tr. 21).

With respect to plaintiff's ability to interact with others, the ALJ acknowledged plaintiff's testimony and reports to her treating providers that she had difficulty being around other people.  (*Id.*).  The ALJ determined that those complaints were not completely consonant with the record, which demonstrated that she maintained psychiatric stability over time and without medication, completed a college degree with high grades, including attending in-person classes and an in-person internship, and maintained interpersonal relationships, including caring for her infant twin daughters.  (Tr. 23-25).

Although plaintiff contends that the ALJ overlooked interaction accommodations made by her school and placed undue emphasis on her relationship with her mother and sister (Docket # 7-1 at 16-17), I do not find that the ALJ overlooked material evidence or mischaracterized the record evidence concerning the plaintiff's treatment, interpersonal relationships, or ability to engage in activities of daily living.  In sum, plaintiff's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence.  "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position."  *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016).  Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record."  *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's

views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)).  The ALJ's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it.  *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                      *s/Marian W. Payson*
                                                      MARIAN W. PAYSON
                                                United States Magistrate Judge

Dated:  Rochester, New York
          February 5, 2024